**BERWALD STEWART CO., Plaintiff-Appellant v. CRESTON CO., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19218.   Decided June 1, 1943.

Sam B. Fitzsimmons, Cleveland, for plaintiff-appellant.
Kitchen & Messner, Cleveland, for defendant-appellee.

**OPINION**

By MORGAN, P. J.

The plaintiff alleged in its petition that on or about January 3, 1940, the defendant employed plaintiff to sell certain lots in an allotment owned by the defendant at the corner of Mayview Avenue and South Hills Drive, Cleveland, Ohio, and that the defendant "did agree to pay plaintiff for its services ten per cent of the sale price of each lot."  The plaintiff further alleged in its petition that "the plaintiff accepted said employment and on or about the 1st day of March, 1940, found a purchaser ready, able and willing to make said

purchase of all sublots heretofore mentioned and did sell for defendant the said described real estate at the price and upon the terms satisfactory to the defendant." That for its services the plaintiff is entitled to the sum of $4512.00 being the amount of said commission for which the plaintiff asks judgment.

The answer of the defendant, after an admission of its ownership of the lots in question, was a general denial.

The case was tried to the court, a jury having been waived and at the conclusion of plaintiff's evidence the court on motion rendered a judgment for the defendant.

No findings were made and no opinion given by the trial court.

The president of The Creston Company, defendant herein, is H. C. Brown who acquired a controlling interest in the defendant company in December, 1939.

The evidence in this case is to the effect that Alfred C. White was employed by the plaintiff as a salesman and that he was authorized by the defendant to find a purchaser for the sublots. In the early part of 1940, White sought to interest George A. Pettibone in the lots and White and Pettibone had meetings with Brown who had an office adjoining the offices of the plaintiff in the Williamson Building. After looking into the proposition Pettibone decided not to purchase the lots.

Pettibone is a builder of houses and was especially interested as agent in the sale of steel frames for houses. Mr. Pettibone was acquainted with Hugh Selby, also a builder of houses in Cleveland. Pettibone took Selby out to defendant's allotment and showed him the lots.

The above facts are undisputed but at this point the evidence is conflicting. Pettibone testified that he told Selby that the lots had been offered to him by Berwald-Stewart Company, the plaintiff, and after Selby had examined the lots, Pettibone suggested to Selby that he go to the Berwald-Stewart Company office in the Williamson Building and that "he could talk to Mr. White or Mr. Brown" about the purchase of the lots.

On the other hand, Selby who was also plaintiff's witness, testified that he was told by Pettibone that the lots could be bought at a good figure and that, if interested, Selby "should see Brown;" that Pettibone did not once refer to the Berwald-Stewart Company as having any interest in the sale.

It is undisputed that Selby met Brown at the latter's office in the Williamson Building about a week later. All of the subsequent negotiations were between Selby and Brown. Neither White, plaintiff's salesman nor Berwald, the president of the plaintiff company, ever met Selby in connection with this matter.

The evidence is also conflicting as to whether Selby when first approached expressed his readiness to purchase the lots. Pettibone testified that shortly after he had shown the lots to Selby, the form-

er told White, plaintiff's salesman, and Brown, the president of defendant company, that Selby "would close a deal with the principals for the entire group of lots" and that at this meeting Brown said to White "that being the case he guessed that White had finally earned his commission."

Selby, however, testified that at the time he was not interested "at the terms Brown had suggested;" that he told Brown that he was not interested "because he could get lots, all that he wanted, on paved streets with all improvements." While other improvements were in, it was admitted that none of the streets in the allotment had been paved. Selby testified that if some arrangement had not later been made for paving the streets he would not have been interested in the purchase of the lots.

Mr. Selby further testified that two or three months went by and that then Brown asked him for terms on which Selby, doing business as the Selby Construction Company, would build two houses for Brown on the allotment. On July 8, 1940, The Selby Construction Company made an offer to Brown to build two houses on the allotment, which was accepted on the same date. Selby further testified that at the same time he told Brown that if the latter would make him a good price on three lots Selby would build on these three lots himself and "we will try five houses in there and see how it goes." Selby purchased three lots at $200.00 each and proceeded to build three houses as well as the two houses for Brown.

According to Selby, he and Brown worked together afterwards to get an assurance from the city that the streets would be paved. When Selby was asked "if those streets had not been paved would you have gone through with the purchase of the lots?" his answer was "I would not."

Later Brown and Selby received satisfactory assurances from the proper officers of the city of Cleveland that when houses would be built on the allotment the streets would be paved. Following these assurances, Selby in the name of his wife, beginning in August, 1940, purchased additional lots at $320.00 each, his total purchase amounting to 111 lots. It is for the sale of these lots that the plaintiff claims a commission.

White did not claim that he ever talked to Selby. He testified that he had discussed the Selby deal with Brown and the latter had said that "you will get paid your commission in the event of a sale." As to the amount of the commission, he testified that Brown had said to him, "I will pay you ten percent."

Mr. Berwald testified that he had had a number of conversations with White and Brown as to the sale of the Creston Park subdivision. He did not recall any specific conversation about a ten percent commission but he added, "that is what we were working on." When negotiations were on with another company for the sale of these same lots he had told Brown that they would compromise on a five percent commission. This deal did not go through.

Mr. Berwald further testified that while he had discussed the Selby deal with Brown, he himself had not met and in fact does not know Selby.

With a jury waived, the trial judge in this case was a trier both of the facts and of the law. If the case had been tried to a jury, and if defendant had made a motion for a directed verdict at the conclusion of plaintiff's evidence, the law is well established that in such a case such a motion should not have been granted unless the court should find that accepting plaintiff's evidence as true and construing the evidence most favorably for the plaintiff he still would not be entitled to a verdict.

The situation where the court is the trier of both the facts and the law is quite different. When in this case the defendant moved for a judgment at the conclusion of plaintiff's case the court had a right to weigh the testimony, to believe some and to disbelieve other testimony as such seemed to the court to be credible or incredible.

On the cross-examination of White, it was developed that he had brought an action for a commission in his own name on this same transaction and in his petition alleged that he had an agreement through Brown with the Creston Company that he was to be paid $50.00 per lot commission in the event of a sale. This suit was later dismissed. The trial court asked a number of questions of White as to this matter and White finally admitted that the statement in the petition filed by him that he was to receive $50.00 per lot commission was not true. Immediately following this admission, the trial judge said "I don't care for any further cross-examination gentlemen, unless you want it;" thus indicating that in the opinion of the trial judge the credibility of White's testimony had been seriously affected by the above admission.

A portion of Mr. Berwald's evidence also seems to indicate that the controversy as to the commission was not between the Berwald-Stewart Company and the defendant, but rather between White and the defendant. Berwald testified that (referring to White and Brown) "they both got mad at me because they wanted me to settle the commission matter." Berwald further testified "and I was so upset about their arguing always in my office that I finally said, 'if you boys will settle it, the Berwald-Stewart won't demand any commission'—I even said that."

In the case of **Cooke v. Cortright, 68 Oh Ap 75,** this court held that where a jury was waived and the court rendered a judgment for defendant at the conclusion of plaintiff's case, upon timely request by plaintiff, the court was required to make findings of fact and conclusions of law. In his opinion in that case Skeel, J., stated:

"We are of the opinion, however, that where the court must give consideration to the credibility of the witnesses and pass upon the probative value of the plaintiff's evidence in deciding the de-

fendant's motion for judgment, he does in fact try the case. * * *

"Where the court is trying the case to a jury and a motion is made by defendant for a directed verdict after the plaintiff has rested his case, the court in passing on the motion, must consider the evidence in its most favorable light to the plaintiff's case. * * *

"But to hold that in passing upon a motion of the defendant for judgment, at the conclusion of the plaintiff's case—where the court is the trier of the facts as well as of questions of law—the court must accept the plaintiff's evidence at its face value without judging its probative value or giving consideration to the credibility of the witnesses, is to misconceive the judicial process. That the court under these circumstances is a trier of the questions of fact we believe is consistent with the greater weight of the best considered cases."

Accordingly, it is our opinion that if in this case the trial judge would have been justified in rendering judgment for the defendant in the event that at the conclusion of plaintiff's evidence the defendant had rested his case without introducing any evidence, the trial judge was justified in this case in granting defendant's motion for judgment at the conclusion of plaintiff's evidence.

The question of fact in this case was whether the proof offered by plaintiff was sufficient to sustain the claim in plaintiff's petition that it "on or about the 1st day of March, 1940, found a purchaser, ready, able and willing to make said purchase of all sublots heretofore mentioned and did sell for defendant the said described real estate at the price and upon terms satisfactory to defendant."

The trial court in rendering judgment for the defendant must have concluded that the plaintiff failed to sustain by sufficient proof the allegations of its petition. Giving due weight to the conclusion reached by the trial judge upon the facts, a synopsis of which we have given above, it is our opinion that the judgment should be affirmed.

SKEEL and LIEGHLEY, JJ., concur.